# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

INTERNATIONAL IP HOLDINGS, LLC,
a Michigan limited liability company, and
INNOVATION VENTURES, LLC,
a Michigan limited liability company,

　　　　*Plaintiffs,*

v.

GREEN PLANET, INC.,
a California corporation,

　　　　*Defendant.*

Case No. 2:13-cv-13988-RHC-PJK

HON. ROBERT H. CLELAND
Mag. Judge Paul J. Komives

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE <u>DECLARATION OF ROBERT LAUSON (DN74)</u>

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

I.    Introduction .......................................................................................... 1

II.   Applicable Legal Standards ................................................................ 1

III.  Discussion ............................................................................................ 2

  A. The Lauson Declaration Satisfies the Requirements of Rule 56 .............. 3

    1.  The statements presented in the Lauson Declaration are based on
        Mr. Lauson's personal knowledge ..................................................... 3

      a.  Paragraph 2 ............................................................................... 3

      b.  Paragraph 3 ............................................................................... 5

      c.  Paragraph 5 ............................................................................... 7

      d. Paragraph 8 ................................................................................ 8

    2.  The facts presented in the Lauson Declaration are admissible
        evidence ............................................................................................ 9

      a.  Paragraph 2 ............................................................................... 9

      b.  Paragraphs 3 and 5 .................................................................. 11

      c.  Paragraph 8 ............................................................................. 13

    3.  Mr. Lauson is competent to testify on the subject matter presented
        in the Lauson Declaration .............................................................. 15

      a.  Paragraph 2 ............................................................................. 16

      b.  Paragraph 5 ............................................................................. 16

  B. Opinions in the Lauson Declaration are Proper Lay Opinion
     Testimony ............................................................................................... 17

  C. The Lauson Declaration is Not an Expert Opinion ................................. 20

IV.  Conclusion ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Daniel v. W. Asset Mgmt.*,
  2011 U.S. Dist. LEXIS 124788 (E.D. Mich. Oct. 28, 2011) ........................ 15, 17

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*,
  670 F.2d 642 (6th Cir.), *cert. denied*, 459 U.S. 916 (1982) .................................17

*Henrob Ltd. v. Bolhoff Systemtechnick GmbH*,
  2008 U.S. Dist. LEXIS 107846 (E.D. Mich. Dec. 23, 2008) ..............................19

*Innovation Ventures, LLC v. N2G Distrib.*,
  763 F.3d 524 (6th Cir. 2014) ...............................................................................13

*Station Enters. v. Ganz, Inc.*,
  2009 U.S. Dist. LEXIS 87904 (E.D. Mich. Sep. 24, 2009) ................... 2, 7, 9, 13

*Upshaw v. Ford Motor Co.*,
  576 F.3d 576 (6th Cir. 2009) .................................................................................2

*Wilson v. Budco*,
  762 F.Supp.2d 1047 (E.D. Mich. Jan. 6, 2011) .....................................................2

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................1

Fed. R. Evid. 401 ...................................................................................................10

Fed. R. Evid. 403 ...................................................................................................12

Fed. R. Evid. 701 .......................................................................................... 1, 6, 17

Fed. R. Evid. 803(8).................................................................................................10

ii

## I.     Introduction

Plaintiffs' Motion to Exclude the Declaration of Robert J. Lauson (DN74) must be denied. The Declaration satisfies the requirements of both Fed. R. Civ. P. 56 and Fed. R. Evid. 701. Plaintiffs assume that it is impossible for someone with specialized knowledge to provide lay opinion testimony. Mr. Lauson's status as a patent lawyer does not prohibit him from providing lay opinion testimony. Further, the vast majority of Plaintiffs' arguments are irrelevant to the issue at hand. Rather than address its admissibility, Plaintiffs would have the Court evaluate the weight that should be applied to Mr. Lauson's statements, which is outside the scope of a motion to exclude. Finally, Plaintiffs mischaracterized much of Mr. Lauson's statements in a feeble attempt to discredit him. For these reasons, Plaintiffs' Motion must be denied.

## II.    Applicable Legal Standards

The statements made in the Lauson Declaration satisfy the requirements of Fed. R. Civ. P. 56 and Fed. R. Evid. 701. Rule 56(c)(4) states:

> An affidavit or declaration used to support or oppose a motion must:
> [1] be made on personal knowledge,
> [2] set out facts that would be admissible in evidence, and
> [3] show that the affiant or declarant is competent to testify on the matters stated.

Concerning lay opinions, Rule 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion

1

is limited to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Should the Court find that certain statements in the Lauson Declaration fall outside the scope of Rule 56 and Rule 701, the appropriate relief is *not* to exclude the entire declaration as Plaintiffs request. "In considering a motion to strike, the Court must 'use a scalpel, not a butcher knife' and only strike portions that are inadmissible under Fed. R. Civ. P. 56(c)(4)." *Wilson v. Budco*, 762 F.Supp.2d 1047, 1057 (E.D. Mich. Jan. 6, 2011) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009). "It is the burden of the party submitting the affidavits to demonstrate that the witness has personal knowledge of the statements contained in the affidavit." *Id*.

## III.   Discussion

As a preliminary matter, many of Plaintiffs' arguments ask the Court to evaluate the weight of the Mr. Lauson's statements. These arguments are improper in the context of a motion to exclude. *See Station Enters. v. Ganz, Inc.*, 2009 U.S. Dist. LEXIS 87904, *10 (E.D. Mich. Sep. 24, 2009) ("The Court notes that much of the substance of Defendants' argument effectively asks the Court to determine the weight of Plaintiff's evidence, which is not properly the subject of this [Motion

to Strike].").

### A. The Lauson Declaration Satisfies the Requirements of Rule 56

#### 1. The statements presented in the Lauson Declaration are based on Mr. Lauson's personal knowledge

##### a. Paragraph 2

Paragraph 2 of the Lauson Declaration states:

> 2. On November 14, 2012, our firm filed a use-based federal trademark application for the 8 HR BUZZ mark on behalf of Defendant Green Planet. *The Examiner approved the mark finding that there was no conflict with any existing mark, despite Plaintiffs' many 5 HOUR ENERGY® registrations.* Attached at Exhibit A is a true and correct copy of Green Planet's use based application for the 8 HR BUZZ mark. Attached at Exhibit B is a true and correct copy of the Examiner's approval of the mark.

DN68 at 1 (emphasis added). Plaintiffs argue that the second sentence is not based on Mr. Lauson's personal knowledge. Plaintiffs' position is absurd. Every sentence in Paragraph 2 states a fact within Mr. Lauson's personal knowledge. Exhibit B (DN68-2), which Mr. Lauson references in Paragraph 2, says, "The trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d)." DN68-2. Mr. Lauson received and read the Notice (DN68-2) and is allowed to take the trademark examiner's word as truth, especially given the inherent trustworthiness of public records. *See* Fed. R. Evid. 803(8), discussed in greater detail below. Therefore, Mr. Lauson has personal knowledge that "The Examiner approved the mark finding that there was no conflict with any

3

existing mark" because the trademark examiner told him as much in the Notice. Plaintiffs would have the Court subvert the inherent trustworthiness of public records, including records by the U.S. Patent and Trademark Office.

Plaintiffs further argue, "Defendant has presented no evidence that the Examiner ever considered any of Plaintiffs' trademarks during the prosecution of Defendant's 8 HR BUZZ trademark application." DN74 at 4. This argument mischaracterizes Mr. Lauson's testimony. He does not say that the trademark examiner explicitly considered the 5-HOUR ENERGY® mark. He simply said that the examiner approved the 8 HR BUZZ mark for publication "despite Plaintiffs' many 5 HOUR ENERGY® registrations." This statement is true regardless of whether the trademark examiner explicitly considered the 5-HOUR ENERGY® marks and 8 HR BUZZ mark side-by-side. Plaintiffs do not dispute that their 5-HOUR ENERGY® marks were listed in the USPTO database at the time the trademark examiner sent the Notice. It is a fact that the trademark examiner searched the USPTO database for registered and pending marks. DN68-2. It is a fact that the trademark examiner found no conflict with any existing marks. DN68-2. Therefore, it follows that the trademark examiner allowed the 8 HR BUZZ mark for publication "despite Plaintiffs' many 5 HOUR ENERGY® registrations." For Plaintiffs to argue that Mr. Lauson has no knowledge that the 8 HR BUZZ mark was examined despite Plaintiffs' registered marks defies logic.

### b.  Paragraph 3

Paragraph 3 of the Lauson Declaration spans several pages and includes numerous pictures. Plaintiffs have taken issue with the following language:

> In preparation for our original motion for summary adjudication, we conducted an investigation of energy shot products that may be similar to the 5-HR ENERGY® mark. Nearly all of the energy shots were in small, cylindrical plastic bottles with cylindrical tops, and with colorful and bright color schemes, similar to 5-HR ENERGY® products. In addition, many of the products contained the words "energy" and "hour" in combination with a number.

DN68, ¶3. Each of these statements is within Mr. Lauson's personal knowledge. Mr. Lauson certainly knows whether he "conducted an investigation of energy shot products that may be similar to the 5-HR ENERGY® mark." In fact, he details this investigation in the Declaration. *See, e.g.*, DN68, pp. 2-6; DN68-3. In short, he traveled to various stores and took pictures of energy shot products.

The following statements—"Nearly all of the energy shots were in small, cylindrical plastic bottles with cylindrical tops, and with colorful and bright color schemes, similar to 5-HR ENERGY® products" and "many of the products contained the words "energy" and "hour" in combination with a number"—are also within Mr. Lauson's personal knowledge. In fact, Exhibit C of the Declaration shows many pictures of convenience and grocery store displays with energy shots in such packaging. *See* DN68-3. Anybody can objectively look at those pictures and see that almost all of energy shots depicted are sold "in small, cylindrical

5

plastic bottles with cylindrical tops, and with colorful and bright color schemes" and that many use a number in combination with the words "energy" and "hour." And that's exactly what Mr. Lauson says. Therefore, this statement is well within his personal knowledge. Plaintiffs' arguments to the contrary are folly.

Plaintiffs then argue that Rule 701 requires Mr. Lauson "to demonstrate that this 'investigation' provided him with personal knowledge of the energy shot industry *as a whole*." DN74 at 5 (emphasis added). Plaintiffs are wrong again. First, the statements concerning Mr. Lauson's investigation are fact statements outside the scope of Rule 701. Even if they fell within the scope of Rule 701, that rule does not require one to have knowledge of the energy shot industry *as a whole* to submit a lay opinion concerning the energy shots sold in a store. It's no surprise that Plaintiffs did not support that argument with citation to case law. The very idea that knowledge of an industry *as a whole* is required to submit a lay opinion under Rule 701 undermines the purpose of permitting lay opinions. In other words, Plaintiffs' argument here is that lay opinions are only proper with special knowledge[1]. Rule 701 says the exact opposite—testimony is "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702".

And if that were not enough, Plaintiffs ignore common sense to argue that it

---

[1] Plaintiffs' argument here is indeed inconsistent with its later argument that having specialized knowledge in one area prevents an affiant from submitting lay opinion testimony under Rule 701. Rather, here Plaintiffs allege that specialized knowledge is *required* to submit a lay opinion under Rule 701.

has "no way of knowing the meanings of the phrases 'nearly all of the energy shots' and 'many of the products'" because "Mr. Lauson does not provide any evidence of how many energy shots he (or his colleagues) investigated." DN74 at 5.[2] The phrases "nearly all of" and "many of the products" refer to the subset of products Mr. Lauson photographed and submitted in Exhibit 3. DN68, ¶3; DN68-3. Plaintiffs can count the number of products in the pictures Mr. Lauson attached to his declaration to see how many he investigated. Any reasonable person can objectively count the number of energy shot products in the photographs and see that the vast majority fit the description that Mr. Lauson presents. This is a non-issue.

### c.  Paragraph 5

Mr. Lauson also has personal knowledge of the statements presented in Paragraph 5. Mr. Lauson states, "The "color fade" is common among 2 oz energy shots, and can be found on similar cylindrical bottles as indicated by the results of a trade dress search." DN68, ¶5. Plaintiffs argue, "Mr. Lauson does not even state that he personally conducted such a trade dress search and therefore this statement cannot possibly be based on his personal knowledge." DN74 at 6. Apparently Plaintiffs did not read the rest of Paragraph 5 of Mr. Lauson's Declaration. The

_____

[2] Defendant need not address this argument since it goes to the weight of the evidence and not the admissibility of the evidence. Therefore, Plaintiffs' argument is inapposite. *See* 2009 U.S. Dist. LEXIS 87904 at *10.

next sentence says, "Attached at Exhibit D are true and correct copies of trademark registrations and websites selling energy shots with similar "color fade" scheme, such as ALL DAY ENERGY, ON GO ENERGY, etc…" Acquiring the trademark registrations and website images presented in Exhibit D constitutes a trade dress search. Therefore, Mr. Lauson had personal knowledge of the statements made in Paragraph 5.

### d. Paragraph 8

Paragraph 8 begins, "Plaintiffs engage in "trademark bullying" in an unfair effort to monopolize the energy shot business by asserting its alleged trademark rights in the 5 HOUR ENERGY® marks, in federal court and in opposition proceedings at the USPTO, against small businesses attempting to enter the energy shot market." DN68, ¶8. Mr. Lauson goes on to cite two articles—one from Forbes and one from the Wall Street Journal—supporting his position. Mr. Lauson read these articles and formed opinions about the 5-HOUR ENERGY® marks based on these articles. To say that he does not have personal knowledge of the articles or his own opinion is nonsense, especially since Plaintiffs admit the articles support his position. DN74 at 6 ("Mr. Lauson cites two internet articles to support his statements").

Defying all reason, Plaintiffs challenge Mr. Lauson's knowledge of the articles that he cited and provided links to because he "does not establish a

definition for 'trademark bullying' nor does he establish any basis for his personal knowledge of this term." DN74 at 6. Whether Mr. Lauson provides a definition for "trademark bullying" or whether he proves that he had personal knowledge of the term "trademark bullying" is irrelevant. He read the articles, gleaned information from the articles, and formed an opinion based on his own knowledge and experience, as confirmed in the articles. He has personal knowledge. No more is required of Mr. Lauson to prove he has personal knowledge of the information presented in the article and his own opinions.

Plaintiffs go on to argue that this statement "is pure attorney argument—not a fact based on personal knowledge." DN74 at 6. Defendant disagrees for the reasons presented in the previous paragraph. But nevertheless, Plaintiffs' argument is outside the scope of the present Motion to Exclude since it addresses the weight of the evidence as opposed to its admissibility. *See* 2009 U.S. Dist. LEXIS 87904 at *10.

### 2.  The facts presented in the Lauson Declaration are admissible evidence

#### a.  Paragraph 2

The statement at issue in Paragraph 2—"The Examiner approved the mark finding that there was no conflict with any existing mark, despite Plaintiffs' many 5 HOUR ENERGY® registrations"—is not hearsay. The only argument Plaintiffs present is as follows: "This statement would not be admissible in evidence (as

9

required by Rule 56) because it is hearsay." Plaintiffs generally cite "Fed. R. Evid. 801, 802" with no further explanation. Mr. Lauson's testimony is based on the Notice of Publication attached to the Declaration as Exhibit B (DN68-2). That document is not hearsay.[3] The Notice of Publication is a public record under Rule 803(8). It's a statement of a public office that sets out the trademark examiner's activities, and Plaintiffs have not shown that it lacks trustworthiness.

With regard the same statement in Paragraph 2, Plaintiffs argue, "As discussed above, it is also facially inaccurate, and, therefore, not relevant. Fed. R. Evid. 401." Evaluating evidence for relevance under Rule 401 does not require the Court to weigh its accuracy. Rule 401 states, in its entirety:

> Evidence is relevant if:
>     (a) it has any tendency to make a fact more or less probable than it
>         would be without the evidence; and
>     (b) the fact is of consequence in determining the action.

The Court has other mechanisms of testing the veracity of Mr. Lauson's statements. But Rule 401 is not one of them. Plaintiffs have not argued any deficiency in Mr. Lauson's statements relative to the actual requirements of Rule

---

[3] Certainly Plaintiffs will concede that communications from the Trademark Office are not hearsay. Plaintiffs, as the purported owner of the trademark and trade dress rights asserted in this case, have relied extensively on statements made by the Trademark Office in bringing this and its myriad of other lawsuits. If Plaintiffs wish to take the position that communications from the Trademark Office are hearsay then so be it. But doing so would seem to undermine this and all of the other trademark lawsuits they have filed over the years.

401[4] but both are satisfied nevertheless. The statement at issue is evidence that the

trademark examiner approved the mark for publication despite the existence of the

5 HOUR ENERGY® marks. This evidence "has a tendency to make a fact more

… probable than it would be without the evidence" (i.e., the 8 HR BUZZ mark is

distinct[5] from 5-HOUR ENERGY® and the other registered and pending marks in

the USPTO database) and "is of consequence in determining the action" (i.e., the 8

HR BUZZ mark falls outside the scope of the asserted trade dress). Thus, Mr.

Lauson's statements are admissible under Rule 401.

### b. Paragraphs 3 and 5

Plaintiffs argue that statements in Paragraphs 3 and 5 are inadmissible for

containing "a host of assertions which are false and misleading" making it

"unfairly prejudicial" under Fed. R. Evid. 403. Plaintiffs make several irrelevant

observations concerning the Lauson Declaration. These include the following

unfounded allegations:

---

[4] Plaintiffs didn't provide any analysis of Rule 401. They couldn't even be
bothered to list the requirements of Rule 401 in their brief.

[5] Continuing to mischaracterize Mr. Lauson's statements, Plaintiffs argue that
Defendant "admits its 8 HR BUZZ name is a 'similar mark' to 5-HOUR
ENERGY" because, according to Plaintiffs, it follows a "numerical component /
durational element / modifier name pattern." DN74 at 7-8; fn. 1. What Mr. Lauson
actually said is "many of the products [he saw on the store shelves] contained the
words "energy" and "hour" in combination with a number." DN68, ¶3. This is
hardly the admission that Plaintiffs contend. Further, when read in context, Mr.
Lauson clearly believes that 8 HR BUZZ is distinct from Plaintiffs' 5 HOUR
ENERGY mark.

- Mr. Lauson used hand-picked examples. *See* DN74 at 7.
- The examples Mr. Lauson relied upon are irrelevant and misleading. *See* DN74 at 7.
- Some of the energy shot bottles do not have any color fade. *See* DN74 at 8.
- Mr. Lauson cites a product that is not an energy shot. *See* DN74 at 8.
- Mr. Lauson cites products that do not come in 2 oz bottles. *See* DN74 at 8.
- Mr. Lauson "fails to present an accurate picture of even the extremely limited portion of the market he cited." *See* DN74 at 9.
- The photographs are of incomplete displays. *See* DN74 at 9.

Plaintiffs conclude that these observations mean that the Lauson Declaration "is more prejudicial to Plaintiffs than probative of any material fact at issue in this case." DN74 at 10.

These observations are just noise. None of Plaintiffs' observations approach the level of danger and prejudice anticipated by Rule 403, which states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The statements in Mr. Lauson's declaration do nothing of the sort. Rather, Mr. Lauson's statements make Plaintiffs uncomfortable, which is why Plaintiffs now complain.

Plaintiffs filed this lawsuit, and many others, asserting their purported trade dress rights. In doing so, Plaintiffs necessarily opened themselves up to scrutiny, especially with regard to the scope of its trade dress. Now Plaintiffs are hoping to

use Rule 403 to prevent such scrutiny. Indeed, in evaluating trade dress infringement, a fact finder is expected to compare various products. *Innovation Ventures, LLC v. N2G Distrib.*, 763 F.3d 524, 537 (6th Cir. 2014) ("The jury was able to use its eyes, look at the various products before it, and decide that a likelihood of confusion existed between [the products]"). To exclude the pictures presented in the Lauson Declaration would not allow consideration of the scope and validity of Plaintiffs' purported trade dress rights. Therefore, the pictures and statements in Paragraphs 3 and 5 are highly probative, and much more probative than prejudicial.

Further, Plaintiffs submitted several pages of arguments speculating on the circumstances surrounding the pictures taken by Mr. Lauson. *See* DN74 at 7-10. Those arguments are inappropriate in a motion to exclude because they are irrelevant to evaluating the admissibility of the evidence. *See, again*, 2009 U.S. Dist. LEXIS 87904 at *10.

### c.  Paragraph 8

Once more, Plaintiffs have mischaracterized Mr. Lauson's testimony. Plaintiffs argue that the two articles Mr. Lauson referenced are hearsay. Plaintiffs suggest that Mr. Lauson formed his opinion on Plaintiffs' trademark bullying from those two articles, and then brushes off Mr. Lauson's statements as "pure, unsupported attorney argument, not evidence." DN74 at 10.

13

When read in context, however, there is nothing inappropriate about Mr. Lauson's statements in Paragraph 8. The first sentence of Paragraph 8 reads: "Plaintiffs engage in 'trademark bullying'… by [1] asserting its alleged trademark rights in the 5 HOUR ENERGY® marks, [2] in federal court and [3] in opposition proceedings at the USPTO, [4] against small businesses attempting to enter the energy shot market." DN68, ¶8. It is undisputed that Plaintiffs have:

> [1] asserted the 5 HOUR ENERGY® mark
> [2] in Federal Courts and
> [3] opposition proceedings against
> [4] small businesses.

According to Mr. Lauson, these premises are evidence that Plaintiffs have engaged in trademark bullying. None of these premises rely on hearsay, and these premises and Mr. Lauson's conclusion of trademark bullying are relevant to the issues in the present case thereby satisfying the requirements of Rule 401.

The articles mentioned in Paragraph 8 support the premises on which Mr. Lauson concluded that Plaintiffs engage in trademark bullying. Plaintiffs argue, "the first article (from Forbes) does not address trademarks or trademark bullying and therefore is not relevant to his statements about trademark bullying" and criticize Mr. Lauson for not "cit[ing] to language in the [Wall Street Journal] article to support any kind of analysis." DN74 at 10. These arguments attempt to distract from the real issue. The Forbes article supports the undisputed factual statements that Plaintiffs have:

14

[1] asserted the 5 HOUR ENERGY® mark
[2] in Federal Courts and
[3] opposition proceedings against
[4] small businesses,

which are the very premises upon which Mr. Lauson concluded that Plaintiffs

engage in trademark bullying. The Wall Street Journal article confirms Mr.

Lauson's opinion that trademark bullying is rampant in the flavored bottled water

industry. Mr. Lauson is permitted to rely upon the articles for factual statements

underlying his lay opinion that Plaintiffs have engaged in trademark bullying.

Even if the Court were to strike the statements in Paragraph 8, that does not change

the fact that Plaintiffs have engaged in trademark bullying by [1] asserting the 5

HOUR ENERGY® mark [2] in Federal Courts and [3] opposition proceedings

against [4] small businesses.

### 3.  Mr. Lauson is competent to testify on the subject matter presented in the Lauson Declaration

Mr. Lauson is competent to testify on the subject matter presented in his

declaration. He stated, under penalty of perjury, "I have personal knowledge of the

facts as stated herein. If called to testify, I would and could competently testify

thereto." DN68 at 1. Mr. Lauson is a lawyer and fully understands the implications

of submitting such a declaration and making such statements. Nothing more is

required to satisfy this requirement. *Daniel v. W. Asset Mgmt.*, 2011 U.S. Dist.

LEXIS 124788, *31 (E.D. Mich. Oct. 28, 2011) ("[T]he affiant is competent to

15

testify on the matters stated. [The affiant] states, under penalty of perjury, that…
she is authorized to give the affidavit.").

### a. Paragraph 2

Plaintiffs engage in more improper hand-waving in an attempt to discredit
Mr. Lauson's statements in his declaration. Plaintiffs argue, "If Lauson were truly
competent to testify to such matters, he would know that Exhibit B to his
declaration is not an 'approval of the mark' but rather an 'Examiner's
Amendment'". DN74 at 11. This is just semantics. The trademark examiner
approved the mark for publication through an Examiner's Amendment, which is a
tacit approval of the mark.[6] That Mr. Lauson used a colloquial expression to
describe the trademark examiner's action is irrelevant to his competency to testify.

### b. Paragraph 5

With regard to Paragraph 5, Plaintiffs submit yet another unfounded reason
for saying Mr. Lauson is not competent to testify. Regarding the language in
question—"Plaintiffs' "color fade" trade dress… is weak and likely invalid"
(DN68, ¶5)—Plaintiffs make two arguments. "First, this statement is a legal
conclusion…" DN74 at 11. "Second, as shown above, Mr. Lauson has not shown

---

[6] Indeed, the only reason the mark has not yet been approved is because Plaintiffs
filed an opposition proceeding against the 8 HR BUZZ mark. *See* Ex. 1. Plaintiffs'
interference with the trademark registration process—i.e., its trademark bullying—
is not evidence of Mr. Lauson's competency or lack thereof.

that he is competent to testify as to matters of trademark law, as required by Rule 56." Each of these arguments will be addressed in turn.

Concerning Plaintiffs' first argument, Mr. Lauson's statement that the trade dress is weak is a question of fact, not a legal conclusion. The strength of a mark is one of the *Frisch* factors, which are questions of fact. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916 (1982). Therefore, it is not a legal conclusion as Plaintiffs purport. Even if it were, the fact that an affiant provides a legal conclusion says nothing about the affiant's competency to testify.

Concerning Plaintiffs' second argument, Mr. Lauson certainly has shown he is competent. Again, he stated, under penalty of perjury, "I have personal knowledge of the facts as stated herein. If called to testify, I would and could competently testify thereto." DN68 at 1. Nothing more is needed. *See* 2011 U.S. Dist. LEXIS 124788 at *31.

## B. Opinions in the Lauson Declaration are Proper Lay Opinion Testimony

Lay opinion testimony is defined by Rule 701, which states:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
    (a) rationally based on the witness's perception;
    (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
    (c) not based on scientific, technical, or other specialized knowledge

17

within the scope of Rule 702.

The opinions in the Lauson Declaration satisfy each of these requirements.

Concerning the first prong, for the few opinions presented in the Declaration, Mr.

Lauson explains the underlying facts that led him to draw his opinions. Thus, Mr.

Lauson's opinions are "rationally based on [his] perception." For example, in

Paragraph 5, Mr. Lauson explains that Plaintiffs' trade dress is weak because of the

similar energy shot products available at the stores he visited. In Paragraph 8, Mr.

Lauson concludes that Plaintiffs are a trademark bully because they:

> [1] asserted the 5 HOUR ENERGY® mark
> [2] in Federal Courts and
> [3] opposition proceedings against
> [4] small businesses.

Thus, Mr. Lauson's opinions are "rationally based on [his] perception." Therefore,

the first prong of Rule 701 is satisfied.

The second prong of Rule 701 is also satisfied. Mr. Lauson's opinions help

the Court understand how weak the asserted trade dress rights are relative to the 8

HR BUZZ product, which is a fact at issue.

Finally, the third prong of 701 is satisfied because Mr. Lauson's opinions are

not "based on scientific, technical, or other specialized knowledge within the scope

of Rule 702." Plaintiffs assume that it is impossible for someone with specialized

knowledge to provide lay opinion testimony. *See* DN74 at 12. ("Mr. Lauson is

attempting to rely on his legal training, experience, and bar admissions as authority

18

for his opinions. Such reliance means that his opinions cannot serve as evidence under Fed. R. Evid. 701"). This is not true.

In *Henrob Ltd. v. Bolhoff Systemtechnick GmbH*, 2008 U.S. Dist. LEXIS 107846 (E.D. Mich. Dec. 23, 2008), the plaintiff submitted a declaration with opinions that "at times ventures into the realm of expert testimony." *Id.* at *17. This Court held that the "statements, while bordering on Rule 702 testimony, reasonably fall within the confines of Rule 701." *Id.* at *18. The Court explained, "Even if more detailed than the typical lay testimony, courts allow lay testimony to testify not only to facts but also for the reasons for those facts." *Id.*

The present facts are analogous to those in *Henrob*. Like the testimony at issue in the *Henrob* case (the Trinick testimony), Mr. Lauson's testimony is largely fact based, and therefore, outside the scope of Rule 701. Also, the Court noted that Trinick's opinion testimony provided context to the tests he performed in the same way that Mr. Lauson's opinions provide context to the scope of Plaintiffs' asserted trade dress rights in view of the myriad of competing energy shot products and Plaintiffs' behavior as a trademark bully. In other words, Mr. Lauson's lay opinions provide the context for the facts at issue. Therefore, the present case is analogous to *Henrob*, and Mr. Lauson's lay opinions are permissible under Rule 701 even if they "border[] on Rule 702 testimony." *Id.*

### C. The Lauson Declaration is Not an Expert Opinion

Plaintiffs argue that Mr. Lauson's declaration is not proper expert opinion testimony. Defendant agrees (but not for the reasons Plaintiffs sets forth in their Brief) and adds that it was never intended as such.

## IV.    Conclusion

Plaintiffs' Motion to Exclude the Declaration of Robert J. Lauson (DN74) must be denied. By now it should be clear to the Court that Plaintiffs' challenge is baseless, misleading, defies logic, and flies in the face of common sense. Not only do Plaintiffs require the Court to set illogical precedent—Plaintiffs would have this Court hold that (a) it is impossible for someone with specialized knowledge to provide lay opinion testimony and (b) specialized knowledge is necessary for lay opinion testimony—the vast majority of Plaintiffs' arguments are irrelevant to determining whether to exclude evidence. Finally, Plaintiffs' obvious mischaracterization of much of Mr. Lauson's testimony is an ineffective attempt to discredit him. For these reasons, Plaintiffs' Motion must be denied.

<div style="margin-left: 40%">

Respectfully submitted,

</div>

Dated:  June 29, 2015

<div style="margin-left: 40%">

s/George T. Schoof_____
BEJIN BIENEMAN PLC
George T. Schoof (P45596)
300 River Place, Suite 1650
Detroit, MI 48207
Tel: (313) 879-0470
schoof@b2iplaw.com

</div>

Robert J. Lauson (Cal. Bar No. 175486)
LAUSON & TARVER LLP
880 Apollo St., Suite 301
El Segundo, CA 90245
Tel: (310)726-0892
bob@lauson.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2015, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE DECLARATION OF ROBERT LAUSON (DN74)** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System: None.

<div style="margin-left: 50%;">

s/George T. Schooff
George T. Schooff (P45596)
BEJIN BIENEMAN PLC
300 River Place, Suite 1650
Detroit, MI 48207
Tel: (313) 879-0470
schooff@b2iplaw.com

*Attorneys for Defendant*

</div>